DAVID J. GALLO *(California Bar No. 127722)*
**LAW OFFICES OF DAVID J. GALLO**
12702 VIA CORTINA, SUITE 500
DEL MAR, CALIFORNIA  92014
Telephone: (858) 509-3652

Attorneys for all Plaintiffs

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| S. WELLONS, C. ARREDONDO, S. DAVIS, T. DEFOREEST, W. DUBA, S. HALL, G. KILGORE, N. LOPEZ, S. MEJIA, T. SELTZER, S. SHARMA, J. SMITH, K. TOFT, C. TOLLIVER, M. VIRAMONTES, M. WALTERS, L. WARNER, D. WILLIAMS,<br><br>          Plaintiffs,<br><br>v.<br><br>PNS STORES, INC., a<br>     California corporation,<br><br>     Defendant.<br><br>────────────────<br><br>BIG LOTS STORES, INC., an<br>     Ohio corporation,<br><br>     Intervenor. | Civil Action Number:<br><br>**3:18-cv-02913 DMS WVG**<br><br><br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO DISQUALIFY COUNSEL**<br><br>Judicial Officer: Hon. Dana M. Sabraw<br><br>Courtroom:  13A<br><br>Date:  13 MARCH 2020<br><br>Time: 1:30 p.m. |

**3:18-cv-02913**
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO DISQUALIFY COUNSEL – PAGE 1**

1

## <u>TABLE OF CONTENTS</u>

2

<u>PAGE</u>

3   INTRODUCTION...................................................................................................5

4   PROCEDURAL FACTS........................................................................................6

5   EVIDENTIARY FACTS........................................................................................7

6         FORMER EMPLOYEES.................................................................10

7             Mr. Michael Legro..............................................................10

8             Ms. Marianne Buchanan.....................................................10

9             Ms. Rebecca Koliboski.......................................................11

10            Ms. Loretta Gutierrez..........................................................12

11            Mr. John Hanson.................................................................13

12            Mr. Bret Gardner.................................................................14

13            Mr. Thomas Moran..............................................................15

14            Ms. Mollie Hall...................................................................16

15        CURRENT EMPLOYEES WITH ADVERSE INTERESTS.........16

16            Ms. Wendy Maxwell..........................................................16

17            Ms. Chyanne Sequin............................................................17

18  ARGUMENT.......................................................................................................18

19  CONCLUSION....................................................................................................21

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**PAGE**

## CASES

*Batze v. Safeway, Inc.* (2017) 10 Cal.App.5th 440....................................................17

*Bobele v. Superior Court* (1988) 199 Cal.App.3d 708..............................................8

*ChemFree Corp. v. J. Walter, Inc.,* 2008 WL 5234252 (N.D.Ga. 2008)...................19

*Continental Ins. Co. v. Superior Court* (1995) 32 Cal.App.4th 94............................8

*Dunbar v. Albertson's, Inc.* (2006) 141 Cal.App.4th 1422.......................................17

*Gregori v. Bank of America* (1989) 207 Cal.App.3d 291..........................................20

*Hamm v. TBC Corp.,* 597 F.Supp.2d 1338 (S.D.Fla. 2009)......................................19

*Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348...............6

*Johnson v. Trueblood,* 629 F.2d 302 (3rd Cir. 1980)................................................18

*Lasar v. Ford Motor Co,* 399 F.3d 1101 (9th Cir. 2005)..........................................18

*Marlo v. United Parcel Service, Inc.,* 639 F.3d 942 (9th Cir. 2011)........................17

*Peabody v. Time Warner Cable, Inc.* (2014) 59 Cal.4th 662....................................17

*Responsible Citizens v. Superior Court* (1993) 16 Cal.App.4th 1717...............19, 20

*Sheller v. Superior Court* (2008) 158 Cal.App.4th 1697..........................................18

*ZB, N.A. v. Superior Court* (2019) 8 Cal.5th 175.............................................6, 7, 20

## STATUTES

Bus. & Prof. Code, § 6125...........................................................................................18

Bus. & Prof. Code, § 6126(a)......................................................................................18

Lab. Code, § 510(a)......................................................................................................7

Lab. Code, § 558..........................................................................................................6

Lab. Code, § 558(a)......................................................................................................6

Lab. Code, §§ 2698, *et seq.*
**(a/k/a "Labor Code Private Attorneys General Act of 2004",
a/k/a "PAGA")**.............................................................................6, 7, 16-18, 20

**3:18-cv-02913**
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION TO DISQUALIFY COUNSEL – PAGE 3**

## TABLE OF AUTHORITIES
### (Continued)

**PAGE**

Lab. Code, § 2699(a)...................................................................................6

Lab. Code, § 2699(i)....................................................................................7

Lab. Code, § 2699(l)(2).............................................................................20

## CALIFORNIA RULES OF PROFESSIONAL CONDUCT

Rule 1.7, Cal. Rules of Prof. Cond................................................................20

Rule 1.8.6, Cal. Rules of Prof. Cond.............................................................14

Rule 4.2, Cal. Rules of Prof. Cond................................................................20

Rule 7.3(a), Cal. Rules of Prof. Cond......................................................18, 19

## LOCAL RULES OF COURT

CivLR 83.3.c.4...........................................................................................18

CivLR 83.4.b..............................................................................................18

## OTHER AUTHORITY

John G. Koeltl & Paul C. Palmer,
*Taking and Defending Depositions in Commercial Cases:*
*Preparing a Witness to Testify,* 469 P.L.I. LIT. 9 (1993).........................................19

**INTRODUCTION**

Defendant, PNS Stores, Inc. **(hereinafter "PNS"),** and Intervenor, Big Lots Stores, Inc. **(hereinafter "BLSI"),** are represented by two law firms, *viz.:* Haight Brown & Bonesteel LLP **(hereinafter "Haight"),** and Vorys, Sater, Seymour and Pease LLP **(hereinafter "Vorys").** Both are unquestionably very fine and capable law firms – highly regarded and rightly so.

Vorys is an Ohio firm.  None of the Vorys attorneys who have participated in this action are licensed to practice in California – they have been admitted in this action *pro hac vice.*  Plaintiffs understand that the admissions *pro hac vice* authorized the Vorys attorneys to represent ***only*** PNS and BLSI **(collectively "Defendants")** in this action.   The evidence now before this Court establishes that Vorys has telephonically solicited a number of non-party witnesses in this action, offered them representation in their capacities as non-party witnesses, and represented them at their depositions herein.  In addition, Vorys attorneys have assumed representation of two current employees of Defendants, who have a pecuniary interest in the outcome of this litigation of which they were unaware, and which is adverse to the interests of Defendants.  In the absence of the relief requested herein, Vorys would continue to represent these and other Californian non-party witnesses in further trial preparation and through trial.

Plaintiffs now request that this Court disqualify the Vorys firm from representing any non-party in this action who is a resident of California, and who testifies in California, and that this Court order the Vorys firm to refrain from offering representation to any California resident in relation to this action without first obtaining Court authority to do so upon noticed motion.  (Plaintiffs would oppose any such motion.)  Plaintiffs also request that this Court consider whether the facts presented herein also warrant disqualification from continued representation of

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO DISQUALIFY COUNSEL – PAGE 5**

Defendants, and/or revocation of admission *pro hac vice.*

## **PROCEDURAL FACTS**

Plaintiffs' Sixth Claim for Relief is asserted under PAGA.[1]  The PAGA claim seeks recovery of civil penalties under Labor Code section 558, subdivision (a).  Labor Code section 2699, subdivision (a), authorizes the PAGA Plaintiff to pursue these civil penalties, "... on behalf of himself or herself and other current or former employees ..." (*See,* Lab. Code, §2699(a).)

> "The PAGA ... empowers employees to sue on behalf of themselves and other aggrieved employees to recover civil penalties previously recoverable only by the Labor Commissioner – including those in section 558. ... All PAGA claims are 'representative' actions in the sense that they are brought on the state's behalf. The employee acts as 'the proxy or agent of the state's labor law enforcement agencies' and 'represents the same legal right and interest as' those agencies – 'namely, recovery of civil penalties that otherwise would have been assessed and collected by the Labor Workforce Development Agency'."

*ZB, N.A. v. Superior Court* (2019) 8 Cal.5th 175, 184-185, *quoting, Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 380.

> "A PAGA representative action is ... a type of *qui tam* action. ... The government entity on whose behalf the plaintiff files suit is always the real party in interest in the suit."

*Iskanian,* 59 Cal.4th, at 382.  (Emphasis added.)  That said, PAGA directs that twenty-five percent (25%) of civil penalties recovered on a PAGA claim, "... shall be

---

[1]      Labor Code Private Attorneys General Act of 2004 **("PAGA"),** Labor Code sections 2698, *et seq.*

1  distributed ... to the aggrieved employees." (*See,* Lab. Code, § 2699(i).)  *See also, ZB,*

2  *N.A. v. Superior Court,* 8 Cal.5th, at 193.  ("The PAGA requires 25 percent of civil

3  penalties recovered to go to aggrieved employees (§ 2699, subd. (i)) ...")  Thus,

4  importantly, **each member of the cohort of aggrieved employees has a financial**

5  **interest in the outcome of the PAGA litigation, and this interest is adverse to that**

6  **of the employer.**

7      In the case at bar, the factual basis for the PAGA claim is Defendants' failure

8  to pay overtime compensation to their store managers (a/k/a "Store Team Leaders")

9  in contravention of Labor Code section 510, subdivision (a).  Plaintiffs' Third

10  Amended Complaint defines the cohort of aggrieved employees thusly:

11          "All persons employed by Defendant, PNS Stores, Inc., at any time

12      after **22 January 2017,** within the State of California in the capacity of

13      Store Manager (a/k/a 'Store Team Leader') who  have worked in excess

14      of eight (8) hours in a workday, and/or in excess of forty (40) hours in a

15      workweek, but who have not received overtime compensation at one-

16      and-one-half times their regular rate of pay."

17  (*See,* 3$^{rd}$AC, at ¶ 47.)

18      The remaining claims in this action are non-representative claims for recovery

19  of unpaid overtime compensation (First, Second, and Third Claims for Relief), and for

20  related penalties for delayed payment of wages (Fourth Claim for Relief), and

21  inaccurate wage statements (Fifth Claim for Relief).

22

23              **EVIDENTIARY FACTS**

24      Each non-party witness addressed herein resides within California, and gave

25  deposition testimony in this action within California.  (*See,* Gallo Declaration, at ¶ 4.)

26  Any who were physically served with deposition subpoenas were served within

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO DISQUALIFY COUNSEL – PAGE 7**

California.  (*See,* Gallo Declaration, at ¶ 4.)

As a preliminary matter, it is noted that Defendants have undertaken extraordinary efforts to silence and control non-party witnesses through Defendants' standardized, "severance agreement", and these have already been reported to this Court.  (*See,* Joint Discovery Plan filed 2 August 2019, Document 29, at 31:12 to 33:25.) Plaintiffs have learned on discovery that numerous important witnesses in this case have signed such "severance agreements", including employees who were **subordinates** of some Plaintiffs (*i.e.,* their assistant store managers), as well as numerous district managers who supervised Plaintiffs.  (*See,* Gallo Declaration, at ¶ 5.)

The non-party witnesses at issue are all former employees, with the exception of two current employees who have a financial interest in this litigation adverse to Defendants.  With regard to former employees a, "... **corporation cannot bring former employees back into the fold for purposes of a lawsuit** merely because there is a risk that the former employee might disclose unfavorable facts." *Continental Ins. Co. v. Superior Court* (1995) 32 Cal.App.4th 94, 117, *quoting, Bobele v. Superior Court* (1988) 199 Cal.App.3d 708, 713-714.  (Emphasis by Plaintiffs.)

Vorys counsel have filed five (5) applications to appear in this action *pro hac vice.*  These are at Documents 6, 7, 8, 49 and 57.  The applications seek authority to appear on behalf of "Defendant" (Documents 6, 49 and 57), or "PNS Stores, Inc." (Documents 7 and 8).  These applications were unopposed, and each was granted. (*See,* Docket Entries 9-11, 51 and 58.)  Only one resulted in an order visible to counsel, and that order provides that the admission *pro hac vice* was, "... for Cory D. Catagnani representing PNS Stores, Inc. ..." (*See,* Docket Entry 51, at Page 2.)  None of the applications seeks authority to represent any non-party witness, or even discloses an intent to do so in the future.  (*See,* Docket Entries 6, 7, 8, 49 and 57.)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO DISQUALIFY COUNSEL – PAGE 8**

The Court may deem it relevant that Plaintiffs' undersigned counsel also represents the plaintiffs in related, state-court litigation **(hereinafter the "State-Court Action")**.[2]  Defendants are represented by the same two law firms in the State-Court Action.  At least three Vorys attorneys have been admitted *pro hac vice* in the State-Court Action.  Each order granting admission *pro hac vice* in the State-Court Action authorizes a Vorys attorney, "... to appear *pro hac vice* on behalf of Defendants ..." (*See,* Gallo Declaration, at Exhibits "A", "B", and "C".)  In January of 2020, when Defendants inquired whether their third application for admission *pro hac vice* in the State-Court Action would be opposed, Plaintiffs requested that Defendants inform the state court of the plaintiffs' position that admission *pro hac vice* does not authorize representation of non-party witnesses.  Defendants' most recent application for admission *pro hac vice* in the State-Court Action includes the following language, which includes that requested by Plaintiffs:

> "Plaintiffs' counsel does not oppose Mr. Clark's application for admission *pro hac vice* to represent the named Defendants in this action. (Clark Decl. ¶ 8.)  **It is the position of Plaintiffs' counsel that, should Mr. Clark seek to represent non-party witnesses in depositions or other matters related to this action, he is required to obtain separate approval from the Court.** (*See id.*) Plaintiffs' counsel has provided no legal authority to support this position, and Defendants have not been able to locate any such authority.  Defendants disagree with Plaintiffs' limited opposition to Mr. Clark's application for admission *pro hac vice*."

---

[2]     *Menlo, et al.* v. Big Lots Stores, Inc., *et al.,* Case No. 37-2019-00024738-CU-OE-CTL, in the Superior Court of California for the County of San Diego.

1   (*See,* Gallo Declaration, at Exhibit "D", at 2:21 to 3:1. [Emphasis added.])  Notably,

2   when the state court granted that application, **the state court, *sua sponte,* underlined**

3   **the word, "Defendants", on the order.**  (*See,* Gallo Declaration, at Exhibit "C".)  The

4   plaintiffs in the State-Court Action have reserved a 24 April 2020 hearing date for a

5   motion to disqualify counsel therein.  (This was the first available hearing date in the

6   state court.)

7           A description of some of the Vorys firm's representation of non-party witnesses

8   in this action in their capacities as such follows:

9                                **FORMER EMPLOYEES**

10           **Mr. Michael Legro:**  Mr. Legro testified on 11 September 2019.[3]  He was

11   formerly employed by Defendants as a "District Team Leader".  (*See,* Legro

12   Transcript, at 10:18-25.)  Mr. Legro resides within California, and he testified in

13   Irvine.  (*See,* Gallo Declaration, at ¶ 4.)  When Mr. Legro received his deposition

14   subpoena, Mr. Legro called Defendants directly (as his former employer) to inform

15   them that he had received a deposition subpoena.  (*See,* Legro Transcript, at 7:1-11.)

16   Thereafter, about two weeks before his deposition, a Vorys attorney telephoned Mr.

17   Legro and offered him representation (which he accepted).  (*See,* Legro Transcript, at

18   7:12-20.)  At the deposition, Vorys announced at it is representing Mr. Legro, and

19   claimed privilege as to pre-deposition communications with him.  (*See,* Legro

20   Transcript, at 6:20-25.)  Plaintiffs' undersigned counsel did not ask Mr. Legro if he

21   is aware that the Vorys attorneys are not licensed to practice in California.

22           **Ms. Marianne Buchanan:**  Ms. Buchanan testified on 13 September 2019 She

23   was formerly employed by Defendants as a "District Team Leader".  (*See,* Buchanan

24   Transcript, at 17:19 to 18:5.)  Ms. Buchanan resides within California, and she

25   _____

26       [3]       Witnesses are discussed in the chronological order of their deposition

27   testimony.  Filed deposition excerpts are arranged in alphabetical order.

28

testified in San Diego.  (*See,* Gallo Declaration, at ¶ 4.)  After Ms. Buchanan received her deposition subpoena, Defendants' in-house counsel telephoned Ms. Buchanan, asked, "... would [Ms. Buchanan] like to be represented by their counsel who was representing them in the case ...", and "instructed" Ms. Buchanan that she would be receiving a call.  (*See,* Buchanan Transcript, at 14:17 to 15:16, and 16:10-13.)  Thereafter, about a week prior to her deposition, the Vorys firm telephoned Ms. Buchanan and offered her representation (which she accepted).  (*See,* Buchanan Transcript, at 12:15 to 13:8.)  The Vorys firm met with Ms. Buchanan in preparation for her testimony.  (*See,* Buchanan Transcript, at 17:2-14.)  The Vorys firm is representing Ms. Buchanan, and claimed privilege as to pre-deposition communications with her.  (*See,* Buchanan Transcript, at 12:12 to 14:6.)  Plaintiffs' undersigned counsel did not ask Ms. Buchanan if she is aware that the Vorys attorneys are not licensed to practice in California.

**Ms. Rebecca Koliboski:** Ms. Koliboski testified on 16 October 2019.  She was formerly employed by Defendants as a "District Team Leader".  (*See,* Koliboski Transcript, at 7:23 to 8:8.)  Ms. Koliboski resides within California, and she testified in San Diego.  (*See,* Gallo Declaration, at ¶ 4.)  After Ms. Koliboski received her deposition subpoena, she contacted Defendants in Ohio, and asked if Defendants could provide counsel.  (*See,* Koliboski Transcript, at 11:6-25.)  At the deposition, Vorys instructed Ms. Koliboski to refuse to answer whether Vorys had telephoned her to offer her representation.  (*See,* Koliboski Transcript, at 12:13-19.)  (Plaintiffs are of the view that the privilege objection and instruction lacked merit, but did not move to compel an answer.)  The Vorys form is representing Ms. Koliboski, and claimed privilege as to pre-deposition communications with her.  (*See,* Koliboski Transcript, at 10:1-12.)  Vorys did not inform Ms. Koliboski that they are not licensed to practice in California.  (*See,* Koliboski Transcript, at 14:23 to 15:3.)  When the licensing

question was asked, the following colloquy ensued:

MR. CATIGNANI:

I'll say, for the record, that I've been admitted pro hoc in the Wellons case, so I'm here perfectly appropriately. There's absolutely no question about my ability to represent **anybody** in this court.

MR. GALLO:

Okay. I'm not sure I agree, because I think the application was to represent party's [should read: "parties"] defendant. So I don't know if it covers anybody else that you might want to represent, and that's just an issue that we'll have to deal with.

(*See,* Koliboski Transcript, at 15:9-18. [Emphasis added.])

The foregoing establishes that Vorys has been on notice of the issue (*i.e.,* scope of admission *pro hac vice*) from at least 16 October 2019. In addition, Koliboski Deposition Exhibit 67 clearly sets out California law regarding solicitation of clients via telephone, which establishes that the Vorys counsel were aware of this at least as of 16 October 2019. (*See,* Koliboski Transcript, Exhibit 67 thereto.)

**Ms. Loretta Gutierrez:** Ms. Gutierrez testified on 5 November 2019. She was formerly employed by Defendants as a "District Team Leader". (*See,* Gutierrez Transcript, at 18:2-13.) Ms. Gutierrez resides within California, and she testified in San Diego. (*See,* Gallo Declaration, at ¶ 4.) After Ms. Gutierrez received her deposition subpoena, she contacted Defendants in Ohio, and asked if Defendants could provide counsel. (*See,* Gutierrez Transcript, at 7:16-18, 8:9 to 9:17.) Thereafter, about a week prior to her deposition, the Vorys firm telephoned Ms. Gutierrez and offered her representation (which she accepted). (*See,* Gutierrez Transcript, at 6:20-23, 10:24 to 11:2.) Vorys did not inform Ms. Gutierrez that they are not licensed to practice in California. (*See,* Gutierrez Transcript, at 12:22-24.) Vorys is representing

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO DISQUALIFY COUNSEL – PAGE 12**

Ms. Gutierrez, and claimed privilege as to pre-deposition communications with her. (*See,* Gutierrez Transcript, at 6:20-23, 11:10-16, and 15:19 to 16:20.)   Gutierrez Deposition Exhibit 80 clearly sets out California law regarding solicitation of clients via telephone, which establishes that the Vorys counsel were reminded of this on 5 November 2019.  (*See,* Gutierrez Transcript, at 5:21-24, and Exhibit 80 thereto.)

**Mr. John Hanson:**  Mr. Hanson testified on 6 November 2019.  He was formerly employed by Defendants as a "District Team Leader".  (*See,* Hanson Transcript, at 6:11-17.)  Mr. Hanson resides within California, and he testified in Berkeley.  (*See,* Gallo Declaration, at ¶ 4.)  Upon receipt of his deposition subpoena, and about four weeks prior to his deposition, Mr. Hanson offered to send his "severance agreement" (which had been subpoened) to Plaintiffs' undersigned counsel.  This offer was declined because it might contravene the terms of the "severance agreement".  (*See,* Gallo Declaration, at Exhibit "E".)  Two days prior to his deposition ("[t]hat was on Monday I think"), Vorys telephoned Mr. Hanson and offered him representation (which he accepted).  (*See,* Hanson Transcript, at 8:18-21, 10:21 to 11:7.)  Vorys did not inform Mr. Hanson that they are not licensed to practice in California.  (*See,* Hanson Transcript, at 11:8-11.)  Mr. Hanson met privately with a Vorys attorney immediately prior to giving his testimony.  (*See,* Hanson Transcript, at 12:23 to 13:4.)  Mr. Hanson then refused to produce an unredacted version of the "severance agreement", "... because Big Lots' attorneys [*sic*], who is also purporting to represent you, told you to withhold it ..." (*See,* Hanson Transcript, at 9:6-11.)  The decision that Mr. Hanson would refuse to produce the subpoenaed unredacted "severance agreement" (which he had previously offered to provide prior to the deposition date) was that of the Vorys counsel, alone.  (*See,* Hanson Transcript, at

13:8-13.)[4]  Mr. Hanson did not know who was paying for his representation, but "assumed" it was Defendants. (*See,* Hanson Transcript, at 10:2-5.)[5]  Mr. Hanson didn't know how many non-party witnesses the Vorys firm purports to represent in this action. (*See,* Hanson Transcript, at 10:6-9.)  Nor did he know the names of the corporate Defendants in this action. (*See,* Hanson Transcript, at 12:5-11.)

**Mr. Bret Gardner:**  Mr. Gardner testified on 8 November 2019.  He was formerly employed by Defendants as a "District Team Leader". (*See,* Gardner Transcript, at 9:22 to 10:5.)  Mr. Gardner resides within California, and he testified in San Diego. (*See,* Gallo Declaration, at ¶ 4.)  Although Mr. Gardner refused the Vorys firm's repeated telephonic offers of representation, the facts surrounding that offer are relevant.  Nine days before Mr. Gardner's deposition, Defendants' Ohio in-house legal department telephoned Mr. Gardner; Mr. Gardner made notes of the call, which recite that  Defendants' Ohio in-house legal department, "[w]anted to see if [Mr. Gardner] was okay with CA [*sic*] law firm working for Big Lots reaching out to me. Vorhees?" (*See,* Gardner Transcript, at 145:3 to 146:4.)  Mr. Gardner recalls that Defendants' Ohio in-house attorney stated that, "... Big Lots had retained a ***California*** law firm by the name of Vorhees and [Mr. Gardner] put a question mark because [he] didn't know how to spell it." (*See,* Gardner Transcript, at 146:1-3. [Emphasis added.])  Thereafter, two Vorys attorneys telephoned Mr. Gardner, and offered to represent him "at no cost". (*See,* Gardner Transcript, at 148:3 to 149:9.)  If they disclosed that they are not licensed to practice in California, Mr. Gardner does not recall the disclosure.

---

[4]    Defendants subsequently produced a number of "severance agreements" as part of the resolution of a discovery dispute.

[5]    A lawyer may be paid by one other than the client only where, "... there is no interference with the lawyer's independent professional judgment or with the lawyer-client relationship ...", and even then only with the client's, "informed written consent[]". (*See,*  Rule 1.8.6, Cal. Rules of Prof. Cond.)

1  (*See,* Gardner Transcript, at 149:10-12, and 150:21-23.)  One of the Vorys attorneys

2  telephoned Mr. Gardner a second time, the night before his deposition, and repeated

3  the offer to represent him.  (*See,* Gardner Transcript, at 150:3-20.)  After Mr. Gardner

4  expressed that he would not be comfortable being represented by Defendants' counsel,

5  they ceased their efforts to obtain his consent to represent him.  (*See,* Gardner

6  Transcript, at 151:2-10.)  The Vorys attorneys then suggested that Mr. Gardner could

7  be "subject to actions" if he produced a copy of his (subpoenaed) "severance

8  agreement", and Mr. Gardner understood this as a "veiled threat".  (*See,* Gardner

9  Transcript, at 151:11 to 152:2.)  The next day, when Mr. Gardner produced a copy of

10  his subpoenaed "severance agreement" at his deposition, the Vorys attorney asserted

11  that, by producing the document in response to the subpoena, Mr. Gardner, "...

12  potentially breached the contract ... [*i.e.,* the "severance agreement"] and subjected

13  himself to potential action or penalties."  (*See,* Gardner Transcript, at 7:16 to 8:1.)

14  This notwithstanding the fact that **Defendants had not moved to quash, or even**

15  **objected to, the subpoena** which required production of the "severance agreement".

16  (*See,* Gallo Declaration, at ¶ 8.)[6]

17      **<u>Mr. Thomas Moran:</u>**  Mr. Moran testified on 19 December 2019.  He was

18  formerly employed by Defendants as a "District Team Leader".  (*See,* Moran

19  Transcript, at 12:4-15.)  Mr. Moran resides within California, and he testified in

20  Berkeley.  (*See,* Gallo Declaration, at ¶ 4.)  One day prior to his deposition, a Vorys

21  attorney telephoned Mr. Moran and offered him representation (which he accepted).

22  (*See,* Moran Transcript, at 6:12 to 7:3.)  Vorys did not inform Mr. Moran that they are

23  not licensed to practice in California.  (*See,* Moran Transcript, at 7:4-10.)  Mr. Moran

24  does not know who was paying for his representation.  (*See,* Moran Transcript, at 7:25

25   

26      [6]    This Court has previously entered the parties' stipulated protective

27  order.  (*See,* Docket Entry 38.)

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO DISQUALIFY COUNSEL – PAGE 15**

1    to 8:5.)  On the day of Mr. Moran's deposition, Vorys attorneys communicated with

2    Mr. Moran in preparation therefor.  (*See,* Moran Transcript, at 10:4-8.)

3        **Ms. Mollie Hall:** Ms. Hall testified on 16 January 2020.  (The transcript of her

4    testimony has not been received as of the date of filing of the instant Motion.)  Ms.

5    Hall resides within California, and she testified in Berkeley. (*See,* Gallo Declaration,

6    at ¶ 4.) Vorys appeared as counsel for Ms. Hall, and Vorys had presumably

7    communicated with Ms. Hall in preparation for her deposition.  (*See,* Gallo

8    Declaration, at ¶ 9.)  Ms. Hall was formerly employed by Defendants as a "Regional

9    Vice President".  (*See,* Gallo Declaration, at ¶ 9.)   Ms. Hall testified that it was she

10   who asked Vorys to represent her.  (*See,* Gallo Declaration, at ¶ 9.)  Ms. Hall was

11   unaware that Vorys is not licensed to practice in California.  (*See,* Gallo Declaration,

12   at ¶ 9.)

13

14                 **CURRENT EMPLOYEES WITH ADVERSE INTERESTS**

15        **Ms. Wendy Maxwell:** Ms. Maxwell testified 21 November 2009.  She is

16   currently employed by Defendants as a Store Team Leader (and is thus within the

17   cohort of aggrieved employees with respect to the PAGA claim).  (*See,* Maxwell

18   Transcript, at 7:12-20, 9:7-9.)  Ms. Maxwell resides within California, and she

19   testified in San Diego. (*See,* Gallo Declaration, at ¶ 4.)  Vorys represents Ms. Maxwell

20   in this action, and communicated with her in preparation for her deposition.

21   (*See,* Maxwell Transcript, at 23:7-16, and 28:18 to 29:10.)  Ms. Maxwell was unable

22   to state when Vorys commenced to represent her, but seemed to understand that such

23   representation followed automatically from the fact that she is employed by

24   Defendants. (*See,* Maxwell Transcript, at 24:12-18.)  Ms. Maxwell works about 47½

25   hours per week.  (*See,* Maxwell Transcript, at 26:21-25.)  Ms. Maxwell testified that

26

27

28

during at least some workweeks,[7] she spent the majority of her worktime on manual task work.  (*See,* Maxwell Transcript, at 33:7 to 34:19.)[8]   The evidence thus establishes that Ms. Maxwell has a financial interest in this litigation ***adverse to*** Defendants.  However, at the time of her deposition, Ms. Maxwell was unaware of the existence of the PAGA claim, or that she has any financial interest in the outcome of this litigation.  (*See,* Maxwell Transcript, at 25:2 to 26:19.)

**Ms. Chyanne Sequin:**  Ms. Sequin testified 19 December 2009.  She is currently employed by Defendants as a Store Team Leader (and is thus within the cohort of aggrieved employees with respect to the PAGA claim).  (*See,* Sequin Transcript, at 6:12-15.)  Ms. Sequin resides within California, and she testified in Berkeley. (*See,* Gallo Declaration, at ¶ 4.)  Vorys represents Ms. Sequin in this action, and communicated with her in private during her deposition.  (*See,* Sequin Transcript, at 5:23-24, 10:3-10, and 31:10-17.)  Ms. Sequin was unaware that the Vorys attorneys are not licensed in California. (*See,* Sequin Transcript, at 10:25 to 11:5.)  Ms. Sequin works from 45 to 60 hours per week.  (*See,* Transcript, at 20:14-23.)  During at least some workweeks, Ms. Sequin spends the majority of her worktime on manual task

---

[7]      Eligibility for overtime compensation is determined on a workweek by workweek basis.  *See, Marlo v. United Parcel Service, Inc.,* 639 F.3d 942, 948 (9th Cir. 2011).  *See also, Dunbar v. Albertson's, Inc.* (2006) 141 Cal.App.4th 1422, 1426-1427; *Batze v. Safeway, Inc.* (2017) 10 Cal.App.5th 440, 478-479. ("[T]he  significant period for determining exempt status is the work week ...") *See also, ibid.,* at 473 n.36, *quoting, Dunbar.*  ("The issue is whether the employees 'spend more than 51% of their time on managerial tasks in any given workweek'.")  *Peabody v. Time Warner Cable, Inc.* (2014) 59 Cal.4th 662, 670. ("Compliance with the requirements of the exemption is determined on a workweek basis."  [Commissioned employee exemption.])

[8]      Immediately after a break in the deposition at the request of Defendants' counsel (and in response to a question by Defendants' counsel), Ms. Maxwell recanted this testimony.  (*See,* Maxwell Transcript, at 88:19 to 91:12.)

---

1  work.  (*See,* Sequin Transcript, at 7:17 to 8:20.)  The evidence thus establishes that

2  Ms. Sequin has a financial interest in this litigation *adverse to* Defendants.  However,

3  at the time of her deposition, Ms. Maxwell was unaware of the existence of the PAGA

4  claim, or that she has any financial interest in the outcome of this litigation.

5  (*See,* Sequin Transcript, at 10:13-24.)

6

7  ## ARGUMENT

8  Practice of law is prohibited to non-California licensees, unless, "... otherwise

9  authorized pursuant to statute or court rule ..." (*See,* Bus. & Prof. Code, §§ 6125,

10 6126(a).)  Admission *pro hac vice* is addressed at CivLR 83.3.c.4.  "[A]ny attorney

11 permitted to practice in this court ...", must comply with the California Rules of

12 Professional Conduct.  (*See,* CivLR 83.4.b.)  It has been held that, "... a violation of

13 *any* disciplinary standard applicable to members of the bar of the court would justify

14 revocation of pro hac vice status." *Johnson v. Trueblood,* 629 F.2d 302, 304 (3rd Cir.

15 1980).  (Emphasis added.)  *Cf.: Sheller v. Superior Court* (2008) 158 Cal.App.4th

16 1697, 1715-1716.  (Reviewing various jurisdictions' views on the requisite grounds

17 for revocation of *pro hac vice* status.)  *Cf.: Lasar v. Ford Motor Co,* 399 F.3d 1101,

18 1114 (9th Cir. 2005).  (Recognizing the district courts' inherent authority to revoke

19 admission *pro hac vice.*)

20 The California Rules of Professional Conduct prohibit telephone solicitation of

21 clients (where pecuniary gain is a significant motive) unless the prospective client is

22 a lawyer herself or himself, or there is a pre-existing family, close personal, or

23 professional relationship. (*See,*  Rule 7.3(a), Cal. Rules of Prof. Cond.)

24 Nor may an attorney represent non-party witnesses who hold interests adverse

25 to their litigant client:

26 "*Assuming that no conflict of interest exists,* there typically would be

27

28

**3:18-cv-02913**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO DISQUALIFY COUNSEL – PAGE 18**

1   no reason why the defending attorney could not also represent a nonparty

2   witness for purposes of that witness's deposition."

3   *ChemFree Corp. v. J. Walter, Inc.,* 2008 WL 5234252, *2 (N.D.Ga. 2008), *quoting,*

4   John G. Koeltl & Paul C. Palmer, *Taking and Defending Depositions in Commercial*

5   *Cases: Preparing a Witness to Testify,* 469 P.L.I. LIT. 9, 16 (1993) **(hereinafter**

6   **"Koeltl & Palmer").** (Emphasis by Plaintiffs.)  However, even in the ***absence*** of a

7   conflict, "... representing a third party during a deposition while also serving as

8   defense counsel ... calls particular attention to the manner in which the attorney was

9   retained by the third party."  *ChemFree,* 2008 WL 5234252, at *3.  "**The dual**

10  **representation invokes particular scrutiny of the ethical constraints on lawyer**

11  **solicitation.**"  *Ibid., citing,* Koeltl & Palmer, at 16-17.  (Emphasis by Plaintiffs.)

12  Improper solicitation may constitute grounds for disqualification.  *See, Hamm v. TBC*

13  *Corp.,* 597 F.Supp.2d 1338 (S.D.Fla. 2009).

14  Plaintiffs respectfully submit that, because the Vorys attorneys have neither

15  sought nor received Court approval to represent non-party witnesses, their

16  representation of California-resident non-party witnesses in this action contravenes the

17  above-cited provisions of the Business and Professions Code.  Even if the Vorys

18  attorneys had sought Court approval to engage in such representation, the genesis of

19  their representation of the former employees discussed above (*i.e.,* telephoning them

20  to offer representation) contravenes California law (*i.e.,* Rule 7.3(a), Cal. Rules of

21  Prof. Cond.), which warrants disqualification even of California-licensed counsel. *Cf.:*

22  *Responsible Citizens v. Superior Court* (1993) 16 Cal.App.4th 1717, 1724.

23  ("Violation of a disciplinary rule may justify disqualification." [Citations omitted.])

24  This unauthorized representation has permitted the Vorys attorneys to communicate

25  with the non-party witnesses under the cloak of privilege, and thereby to obtain

26  exclusive access to information which they will use to the benefit ***of Defendants*** in

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO DISQUALIFY COUNSEL – PAGE 19**

this action (unless they are wholly disqualified).  *Cf.: Gregori v. Bank of America* (1989) 207 Cal.App.3d 291, 300.  ("[A] court must not hesitate to disqualify an attorney when it is satisfactorily established that he or she wrongfully acquired an unfair advantage that undermines the integrity of the judicial process and will have a continuing effect on the proceedings before the court." [Citations omitted.])  This while Plaintiffs are prevented from communicating with these same non-party witnesses both under the terms of the so-called "severance agreements", and by operation of Rule 4.2, Cal. Rules of Prof. Cond. (which prohibits *ex parte* contacts with represented persons).

With regard to the current employees discussed above (*i.e.,* Maxwell and Sequin), a conflict of interest exists, because Ms. Maxwell and Ms. Sequin have pecuniary interests in this action which are adverse to those of Defendants.  "A per se or automatic disqualification rule applies when counsel's representation of one client is adverse to the interests of another *current* client."  *Responsible Citizens, supra,* 16 Cal.App.4th, at 1724.  Because Ms. Maxwell and Ms. Sequin were not even aware of the PAGA claim, they could not have given the "informed written consent" requisite to an effective waiver of conflict.  (*See,* Rule 1.7, Cal. Rules of Prof. Cond.)  It is also questionable whether Ms. Maxwell and Ms. Sequin ***could*** waive the conflict, as a PAGA claim may only be settled upon court approval (*see,* Lab. Code, § 2699(l)(2)), and the PAGA claim is the property of the State.  *Cf.: ZB, N.A. v. Superior Court, supra,* 8 Cal.5th, at 197-198.  (Aggrieved employee has no power to waive right to present the State's PAGA claim to a judicial forum.)

It is clear that the Court should disqualify the Vorys firm from representation of any of the non-party witnesses discussed herein.  This Court should also disqualify the Vorys firm from continuing to represent the Defendants herein.  Plaintiffs' view is that the Vorys firm's unauthorized representation of non-party witnesses has given

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO DISQUALIFY COUNSEL – PAGE 20**

the Vorys firm exclusive access to witnesses, cloaked by privilege, which is inconsistent with fundamental fairness.  Special factors which militate in favor of disqualification are: (a) Defendants' standardized, "severance agreement", which prohibits critical witnesses from submitting to *ex parte* interviews by Plaintiffs' counsel (*see,* Joint Discovery Plan filed 2 August 2019, Document 29, at 31:12 to 33:25); and (b) absence of prejudice to Defendants.  Disqualification would not prejudice Defendants because, as noted above, Defendants are also represented in this action by the Haight firm.  As noted above, both are unquestionably very fine and capable law firms, which are highly regarded, and rightly so.  Accordingly, there is no compelling need for Defendants to be represented by an out-of-state law firm.

## CONCLUSION

WHEREFORE, this Court should enter an order revoking admission *pro hac vice,* and also disqualifying the Vorys firm entirely.  Alternatively, this Court should enter an order disqualifying the Vorys firm from representing any of the non-party witnesses named herein,[9] and prohibiting the Vorys firm from offering or providing legal representation to any California-resident non-party in relation to this action, in the absence of Court approval upon noticed motion.

In addition, this Court should direct the Vorys firm to serve a copy of this Court's order on the instant Motion upon each non-party witnesses named herein, so that they are aware that they are no longer represented by the Vorys firm.

///

///

///

---

[9]      Except Mr. Gardner, who refused Vorys' repeated telephonic offers to represent him in this matter.

1   Dated: 7 February 2020          Respectfully submitted,

2

3                             DAVID J. GALLO
**LAW OFFICES OF DAVID J. GALLO**
12702 VIA CORTINA, SUITE 500
4                             DEL MAR, CALIFORNIA  92014-3769
Telephone: (858) 509-3652

5                                 /s/ David J. Gallo
6                          By:   David J. Gallo,
California Bar No. 127722
Attorneys for all Plaintiffs

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28